The STATE of Ohio, Appellee,

v.

McWHITE, Appellant. █

[Cite as *State v. McWhite* (1991), 73 Ohio App.3d 323.]

Court of Appeals of Ohio,
Lucas County.

No. L–89–303.

Decided June 14, 1991.

*Anthony G. Pizza,* Prosecuting Attorney, *Dean P. Mandross* and *John J. Weglian,* for appellee.

*Thomas P. Kurt,* for appellant.

---

*Per Curiam.*

This matter is before the court on appeal from the Lucas County Court of Common Pleas. The facts giving rise to this appeal are as follows. On August 7, 1988, the bodies of Stephanie Smith, age twenty-two, and her daughter Nateasha Smith, age six, were found in a bedroom of their Toledo apartment. They had been dead approximately thirty-three hours. An autopsy report showed that both victims had been strangled. In addition, Stephanie Smith had been stabbed. Stephanie Smith's three-year-old son, James McWhite, Jr. ("Jake") was also found in the bedroom. He had survived a strangulation attempt and was treated at the hospital for burn and abrasion marks on his neck.

On August 17, 1988, appellant, James C. McWhite, Sr., boyfriend of Stephanie Smith and father of Jake, was indicted on two counts of aggravated murder with death specifications, violations of R.C. 2903.01(A) and one count of felonious assault, a violation of R.C. 2903.11(A)(1). On September 14, 1989, a jury found appellant guilty on two counts of complicity to commit murder, violations of R.C. 2903.02, and one count of felonious assault. He was sentenced to a period of incarceration of fifteen years to life on the murder convictions and eight to fifteen years on the felonious assault conviction. Appellant filed a notice of appeal from those convictions on October 13, 1989.

Westley Ulis, a close friend of James McWhite, Sr., was also indicted for the murders of Stephanie and Nateasha Smith and the assault on Jake. On June 8, 1990, Ulis pled no contest to two counts of aggravated murder and one count of attempted murder. Ulis's appeal is currently pending before this court.

Appellant James McWhite, Sr., sets forth the following assignments of error:

"I. Appellant's Sixth Amendment right to confront witnesses against him was violated by the court's admission of the statements of James McWhite, Jr., through the testimony of state's witness Terrence Scully.

"II. The trial court erred in permitting the state to introduce statements of James McWhite, Jr., through the testimony of state's witness Terrence Scully pursuant to Rule 803(4), Ohio Rules of Evidence.

"III.  The trial court erred in permitting the state's witness Terrence Scully to render an expert opinion as to the veracity of James McWhite, Jr., concerning statements made by him.

"IV.  The trial court erred in refusing admission of defense exhibits 'A,' 'B,' 'C,' and 'D.'

"V.  The trial court erred in permitting state's witness Paula Mason to testify regarding anonymous threats she received prior to trial and in admitting an anonymous handwritten note containing the threat.

"VI.  The attorney for the state of Ohio committed prosecutorial misconduct by making extensive allegations in his opening statement which he knew would be *totally unsupported by evidence*, thereby violating appellant's constitutional right to a fundamentally fair trial."

Initially we will consider appellant's third assignment of error.  Appellant contends that the court erred in admitting the testimony of clinical psychologist Dr. Terrence Scully.  Specifically, appellant contends that the court erred in allowing Dr. Scully to render an opinion as to the veracity of Jake McWhite.  We agree.

Dr. Terrence Scully is a clinical psychologist specializing in the treatment of children, adolescents, and their families.  He testified that in August 1988 the Lucas County Children Services Board contacted him and requested that he see three-year-old Jake McWhite in therapy.  Over a one-year period, Scully had approximately one hundred meetings with Jake McWhite.  Scully testified that during these sessions Jake McWhite mentioned the events leading up to the murders of his mother and sister.  Jake McWhite's recollections were crucial in that he was the only witness present other than appellant and Westley Ulis when his mother and sister were killed.  However, Jake McWhite himself could not testify as a witness since he was found incompetent[1] after an in-chambers voir dire examination.  Before Scully took the stand, defense counsel made a continuing objection on the record to anything Scully would testify to regarding statements made to him by Jake McWhite.  The trial judge noted on the record that the objection was to apply to all testimony of Scully.

Scully began his testimony by explaining that he had treated Jake McWhite for emotional and behavioral problems.  Cautioning that a three-year-old's memory is often fragmented, Scully testified that over a period of time Jake McWhite relayed the following information with regard to the murders.  Jake

---

1. The court clearly found Jake McWhite incompetent.  After this finding, the trial judge then made the statement that he felt Jake McWhite was intimidated.

McWhite indicated that he was present when his mother and sister were killed. He also told Scully that on that day someone had tied a shirt around his neck. Jake McWhite told Scully that his mother had yelled, "Don't kill us." Jake McWhite repeatedly told Scully that "Wes killed my momma with a knife." Jake McWhite told Scully that appellant was in a bedroom sitting on his weight bench when Wes killed Stephanie Smith. Finally, Jake McWhite stated that Westley Ulis and his father locked him (Jake), his sister and his mother in a bedroom.

Toward the conclusion of Scully's direct testimony the prosecution asked:

"Q: Doctor, to your knowledge has Jake ever lied to you?

"[Dr. Scully] A: Not to my knowledge.

"Q: And are you aware of any incentive for him to lie about the information that he gave you this past year?

"[Dr. Scully] A: I am not aware of any motive that he would have to do that."

The syllabus in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, states as follows: "An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." See, also, *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 897. In *Boston*, the Supreme Court of Ohio found that the court erred in allowing two expert witnesses to give an opinion that a four-year-old sex abuse victim was truthful. Citing *State v. Eastham* (1988), 39 Ohio St.3d 307, 312, 530 N.E.2d 409, 413, the court held that "in our system of justice it is the fact finder, *not the so-called expert or lay witnesses,* who bears the burden of assessing the credibility and veracity of witnesses." (Emphasis added.) *Boston, supra,* 46 Ohio St.3d at 129, 545 N.E.2d at 1240. In the above-quoted portion of the doctor's testimony, Scully expressed his general belief that young Jake was overall a truthful patient. We do not find this testimony in and of itself to be prejudicial. However, for the purpose of applying the *Boston* syllabus, we find the following testimony to be critical.

"Q: Now, do you have any *opinion* regarding whether any of *these statements* are the product of his imagination, for example?

"[Dr. Scully] A: I do not believe they are."

Because Jake McWhite was unable to testify, Dr. Scully's testimony specifically relaying Jake McWhite's statements implicating appellant in the murders of Stephanie and Nateasha Smith is an extremely critical element of the state's case against appellant. For this reason there is little doubt that the prosecutor was poignantly referring to Jake's account of the murders when he [the prosecutor] questioned Scully on Jake's veracity regarding "these state-

ments." To inquire as to whether a statement is a product of the imagination is equivalent to an inquiry regarding fantasizing. We believe that this particular question solicited the type of testimony from Scully that *Boston, supra,* 46 Ohio St.3d at 128, 545 N.E.2d at 1239 expressly forbids. This court is in agreement with the *syllabus* in *Boston.* Moreover, as this court is bound by the syllabus in *Boston* (see *Smith v. Klem* [1983], 6 Ohio St.3d 16, 18, 6 OBR 13, 15, 450 N.E.2d 1171, 1172; *State ex rel. Canada v. Phillips* [1958], 168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722; Rule I, S.Ct.R. Rep. Op.), we find that Dr. Scully's testimony was "egregious, prejudicial and constitutes reversible error." *Boston, supra,* 46 Ohio St.3d at 128, 545 N.E.2d at 1240. Accord *State v. Burns* (Mar. 14, 1991), Cuyahoga App. Nos. 58202 and 58212, unreported, 1991 WL 34725.

█ At this juncture we would like to address the state's contention that the veracity questions were the direct result of appellant's own "invited error." "The rule of 'invited error' prohibits a party who induces error in the trial court from taking advantage of such error on appeal." *State v. Woodruff* (1983), 10 Ohio App.3d 326, 10 OBR 532, 462 N.E.2d 457. The state contends that appellant's counsel initially raised the issue of Jake McWhite's veracity in his opening statement by inferring that three-year-old Jake McWhite had been "coached" into making statements against appellant's best interest. The state contends that they had a right to respond to appellant's coaching defense by questioning Dr. Scully on the subject and, thus, any error committed through the admission of those questions was invited by appellant. We cannot agree with the contention of the state that the doctrine of "invited error" applies to remarks made in an opening statement. The purpose of an opening statement is to advise the jury what counsel expects the evidence to show. Its purpose is not to invite a line of questioning which invades the province of the jury. Accordingly, appellant's third assignment of error is found well taken.

█ We now turn to appellant's remaining assignments of error. The court in this case admitted Dr. Scully's testimony under Evid.R. 803(4), a hearsay exception for statements made pursuant to medical diagnosis or treatment. Citing *Boston, supra,* appellant contends in his second assignment of error that the court erred in admitting Dr. Scully's testimony under Evid.R. 803(4) since Dr. Scully is a clinical psychologist and not a medical doctor.

Evid.R. 803(4) provides as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * * *

"(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

The rule does not explicitly limit its scope to statements regarding the declarant's bodily condition. Weissenberger's Ohio Evidence (1991) 55, Section 803.48. Yet, the Staff Note to Evid.R. 803(4) is silent on the issue of whether or not a clinical psychologist's testimony is admissible.

In *Boston, supra,* the Supreme Court of Ohio *in dictum* warned against the liberal use of Evid.R. 803(4) in cases involving statements of young children. *Id.,* 46 Ohio St.3d at 122, 545 N.E.2d at 1234. The court correctly stated that hearsay under Evid.R. 803(4) carries an "indicia of reliability" in that patients are naturally motivated to be truthful with their treating physician in order to obtain effective treatment. *Id.* at 121, 545 N.E.2d at 1233. Herein lies the problem the Supreme Court has with Evid.R. 803(4) in its application to children. It is very difficult to determine just what a three year old's motivation is in talking to a physician. The court found it doubtful that a three year old would understand the necessity of being truthful with a physician. Moreover, because of Evid.R. 102 which states that the Ohio evidence rules " * * * shall be construed to state the common law of Ohio unless the rule clearly indicates that a change is intended * * * ", the Supreme Court may employ a literal reading of Evid.R. 803(4) thereby disallowing the testimony of nonmedical personnel such as a clinical psychologist and other professionals.

The state has a compelling interest in safeguarding the physical and *psychological* well-being of minor victims. *New York v. Ferber* (1982), 458 U.S. 747, 756–757, 102 S.Ct. 3348, 3354–3355, 73 L.Ed.2d 1113, 1122–1123. Public policy demands that courts protect child victims and convict their assailants. Note, Evidence—Hearsay—Child Abuse and Neglect—A Child's Statements Naming an Abuser Are Admissible Under the Medical Diagnosis or Treatment Exception to the Hearsay Rule (1984), 53 Cin.L.Rev. 1155; 1166. To this end, other courts have followed a different approach with regard to Evid.R. 803(4). In child abuse cases many courts have admitted testimony from nonmedical personnel under Evid.R. 803(4) as long as those statements were made *in the course of treatment,* be it physical or psychological, regardless of the child's motivation. *State v. Garrett* (July 16, 1990), Clermont App. No. 89–08–070, unreported, 1990 WL 98222; *State v. McCollum* (Apr. 14, 1989), Sandusky App. No. S–88–15, unreported, 1989 WL 35502; *United States v. Provost* (C.A.8, 1989), 875 F.2d 172; *Nelson v. Farrey* (C.A.7,

1989), 874 F.2d 1222; *United States v. DeNoyer* (C.A.8, 1987), 811 F.2d 436; *Drum v. Commonwealth* (Ky.1990), 783 S.W.2d 380 (adopting the approach to Evid.R. 803(4) as followed by the federal rules); *State v. Murphy* (1990), 100 N.C.App. 33, 394 S.E.2d 300; *State v. Altgilbers* (1989), 109 N.M. 453, 786 P.2d 680 (" * * * inquiry into patient's motive in making statement was not necessary").

As child abuse cases increase throughout the country at an alarming rate it has become apparent that psychological counseling is just as important in treating child victims of crime as is medical treatment for the child's physical injuries. To unequivocally exclude clinical psychologists and other professionals from the scope of Evid.R. 803(4) is to ignore the reality that these people are trained professionals qualified to render objective opinions on the probability that a child has been subjected to abuse. These professionals play an invaluable role in cases involving very young children like Jake McWhite. Moreover, the language of Evid.R. 803(4) focuses on the declarant's motivation in making the statement, rather than to *whom* it was made. We believe that the syllabus of *Boston* does not preclude the testimony of clinical psychologists and other professionals in cases involving child victims of crime. Rather, it is in keeping within the spirit and purpose of Evid.R. 803(4).

■ As stated above, Evid.R. 803(4) carries a guarantee of trustworthiness based on the assumption that a person will be truthful with a physician about his or her physical condition to avoid the risk of harmful treatment resulting from untruthful statements. Appellant contends that at the time of his treatment, Jake McWhite was too young to understand the necessity of being truthful with Dr. Scully.

In *State v. Robison* (Oct. 22, 1986), Pickaway App. No. 85–CA–12, unreported, 1986 WL 11935, the Fourth District Court of Appeals addressed a similar issue. In *Robison*, appellant was convicted of felonious assault and felonious sexual penetration of his seven-year-old daughter. On appeal, appellant argued that his daughter's statements made to her treating psychologist were inadmissible under Evid.R. 803(4) since his daughter was too young to understand that she was undergoing treatment. The court disagreed, stating:

"The record indicates the child had to be tested four times before the diagnosis could be completed, as she simply 'could not stand the pressure.' The doctor indicates that since then she has progressed in her therapy and has come to trust the doctor a great deal, enough, in fact, to tell the doctor what had happened to her. Clearly, at some level, the child understands she is receiving help from psychological treatments, and she is responding to that treatment. The statements were made as part of the emotional healing process, and as such, were made for the purposes of medical treatment."

In *State v. Nelson* (1987), 138 Wis.2d 418, 406 N.W.2d 385, the Supreme Court of Wisconsin held that a four-year-old child declarant's hearsay statements made to her psychologist were admissible under Evid.R. 803(4). The court cited a number of factors which indicated that the child knew she was receiving treatment. Among these was the fact that the child's visits were formally conducted in the doctor's office on an appointment basis, the fact that the doctor conducted a series of tests on the child and the fact that the child was aware that the doctor was an authority figure. The court stated:

"It is always difficult for a court to determine whether a very young child completely understands the context in which information is sought from that child. However, we do not believe that, because a child is only three or four years of age at the time he or she goes to a doctor, the child is unable to comprehend that the child is involved in the process of receiving diagnosis or treatment. A child is no less aware of the existence of emotional or mental pain than physical pain and, thus, is equally aware of the necessity and beneficial nature of therapy.

"Just as a child three or four years of age understands that statements made to a physician will be used by that physician to ease the physical pain of the child, we conclude that such a child also understands that statements made to a psychologist will be used by the psychologist to ease the emotional or psychological injuries of the child." *Id.* at 432, 406 N.W.2d at 391.

Interestingly, the Eighth Circuit Court of Appeals in *United States v. Renville* (C.A.8, 1985), 779 F.2d 430, 441, stated that "a declarant's young age is a factor that may substantially lessen the degree of skepticism with which we view their motives."

In the present case, the record shows that Jake McWhite met with Dr. Scully approximately one hundred times over a one-year period. Almost all of the sessions took place in Dr. Scully's professional office. Dr. Scully administered a variety of tests on Jake. As he progressed in his treatment, young Jake began to refer to Dr. Scully as "Dr. Terry," clearly recognizing the doctor as an authority figure. We believe as in *Robison, supra,* that at some level young Jake understood that he was receiving help from Dr. Scully and he was therefore motivated to tell the truth. Accordingly, appellant's second assignment of error is found not well taken.

■ Appellant's first assignment of error addresses the conflict between the confrontation clause and hearsay's many exceptions. Appellant contends that the admission of Dr. Scully's testimony under Evid.R. 803(4) effectively denied appellant his Sixth Amendment right to confront a witness against him.

The Sixth Amendment to the United States Constitution provides as follows: "[I]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." However, the United States Supreme Court has never held that an accused has an absolute right to a face to face confrontation. *Maryland v. Craig* (1990), 497 U.S. 836, 846, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666, 677. Specifically addressing the relationship between the confrontation clause and the hearsay rule, the United States Supreme Court held:

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts* (1980), 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608.

Evid.R. 803(4) is a firmly-rooted hearsay exception. *Boston, supra,* 46 Ohio St.3d at 127, 545 N.E.2d at 1239; *State v. Leonard* (Nov. 6, 1989), Montgomery App. No. 10973, unreported, 1989 WL 135306. Having already determined that Dr. Scully's testimony was properly admitted under the firmly rooted hearsay exception of Evid.R. 803(4), we find that under *Roberts,*[2] *supra,* Dr. Scully's testimony bears adequate "indicia of reliability" to satisfy the confrontation clause. Accordingly, appellant's first assignment of error is found not well taken.

■ In appellant's fourth assignment of error, he contends that the court erred in refusing to admit a series of letters that the state's witness, Paula Mason, had written to appellant.

Mason testified that she had known appellant for approximately eleven years and that appellant was the father of her son. Mason testified that on August 6, 1988, she went to City Park in Toledo where she encountered appellant. Mason did not yet know that Stephanie Smith had been murdered. Mason testified that appellant appeared disheveled and that he had been drinking. Mason testified that appellant grabbed her arm and said "It should have been you. You're the next one to be killed." Appellant then apologized to Mason and went on to explain that Stephanie Smith was dead and that his son Jake McWhite was locked in a bedroom. The next day, Sunday, August 7, 1988, Mason learned that Stephanie Smith had indeed been murdered. On

---

2. Although the court in this case found Jake McWhite incompetent rather than unavailable, we believe that *Roberts* remains applicable. The Staff Note to Evid.R. 803 suggests that unavailability is not an absolute requirement. In *State v. Wagner* (1986), 30 Ohio App.3d 261, 30 OBR 458, 508 N.E.2d 164, the Eighth District Court of Appeals stated that availability was only one of the many factors upon which reliability is tested.

Monday, August 8, 1988, Mason anonymously contacted the police and informed them that appellant was most likely involved with the murder of Stephanie Smith.

On cross-examination, defense counsel questioned Mason on a series of letters that she had written to appellant approximately a year after the murders in August 1989. In these letters, Mason asked appellant to marry her. In one of the letters Mason wrote, "They [the police] want me to say something that's not right." When questioned about these letters on cross-examination Mason claimed that "the letters are all lies." The court refused to admit the letters into evidence on the basis that they constituted inadmissible hearsay.

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A trial court is entitled to broad discretion in its evidentiary rulings. *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 400, 473 N.E.2d 768, 791, citing *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 305, 224 N.E.2d 126, 130; *State v. Williams* (1982), 7 Ohio App.3d 160, 7 OBR 204, 454 N.E.2d 1334. This court will only reverse a court's ruling where an abuse of discretion materially prejudices the defendant. *Id.*

Appellant argues that the letters were not offered to prove the truth of the matter asserted but rather were offered to show that Mason was angry or vengeful toward appellant for spurning her marriage proposals.

After reviewing Mason's testimony in its entirety, we find no error in the court's refusal to admit the letters into evidence. Defense counsel was given an opportunity to freely question Mason on the contents of the letters. Moreover, these letters were written almost a year after appellant had gone to the police with damaging information regarding appellant's involvement in the murders. Thus, the 1989 letters would have offered little if any proof of Mason's motivation in talking to the police about appellant in August 1988. We therefore find no abuse of discretion in the court's refusal to admit Mason's letters into evidence. Appellant's fourth assignment of error is found not well taken.

■ In appellant's fifth assignment of error, he contends that the court erred in allowing Mason to testify on direct examination about an unsigned handwritten note she had received prior to trial. The note was placed in her mailbox. It read, "You know better. Your dead if anything go wrong [*sic* ]." The state asked Mason if receiving the note caused her to be afraid. Mason

responded affirmatively. Defense counsel objected to the testimony on the basis of relevancy and prejudice.

Given the fact that Mason had previously testified that appellant had personally threatened her life, we find any prejudicial effect of her testimony regarding the unsigned note to be minimal at best. Accordingly, the trial court did not abuse its discretion in admitting this testimony, and appellant's fifth assignment of error is found not well taken.

In his sixth and final assignment of error, appellant contends that the prosecutor committed prosecutorial misconduct in his opening statement. Appellant contends that the prosecutor made extensive allegations against appellant knowing full well that such allegations would not be supported by the evidence.

Our detailed review of the prosecution's opening statement reveals no error. It is well settled that for the most part counsel is given latitude in presenting opening statements. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912. Moreover, defense counsel did not object to the prosecution's opening statement. This court will generally not address alleged errors which could have been corrected below. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; *State v. Davis* (Apr. 18, 1990), Lorain App. No. 004390, unreported, 1990 WL 49985. Accordingly, appellant's sixth assignment of error is found not well taken.

On consideration whereof, the court finds that the defendant was prejudiced and prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.