[Cite as *State v. Rutherford*, 2018-Ohio-2638.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 17CA883 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| CLINTON RUTHERFORD, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 06/26/18** |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Stephen P. Hardwick, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Robert Junk, Pike County Prosecuting Attorney, and Michael A. Davis, Assistant Pike County Prosecuting Attorney, Waverly, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Appellant Clinton Rutherford was convicted of rape and gross sexual imposition after a bench trial in the Pike County Court of Common Pleas in February 2017 and now appeals the judgment entry of sentence journalized April 18, 2017. On appeal, he asserts the trial court erred in permitting an unlicensed psychological counselor to testify as to certain statements made by the victim. Based upon our review of the pertinent Ohio case law, we find no merit to Appellant's argument. Accordingly, we

overrule the sole assignment of error and affirm the judgment of the trial court.

## FACTS

{¶2} In November 2015, Appellant's 7-year-old daughter, "L.R.," was being prepped for a tonsillectomy when a nurse noticed fresh vaginal bleeding. Upon further examination, it was determined that L.R. had abrasions inside her vagina and outside on the vaginal area. These findings were reported to Pike County Children's Services, and an investigation ensued. L.R. was removed from the home where she lived with her parents, Appellant and Amber Rutherford, her siblings, and other extended family.[1]

{¶3} L.R. and her siblings went to live with a foster family in a nearby county. Her parents had supervised weekly visits. In January 2016, L.R. began receiving counseling for mental health issues upon referral to the Woodland Center, a facility in Jackson, Ohio. In March 2016, L.R. made revelations during a group counseling session at her school, regarding Appellant, which were reported to the appropriate authorities.

{¶4} Appellant was subsequently interviewed by Major Tracy Evans of the Pike County Sheriff's Department. During a second interview, Appellant explained that he had been having sex with his wife but

---

[1] The Rutherfords and their three children lived in the basement of Appellant's mother-in-law's house. Appellant's mother-in-law lived upstairs with her significant other and his adult son.

mistakenly touched L.R.'s vagina with his penis.  Appellant blamed the

mistake on his being overmedicated.  Appellant and his wife were thereafter

indicted jointly on various felony counts:

> 1) R.C. 2907.02(A)(1)- Rape of a child under ten years of age;
>
> 2) R.C. 2907.05(A)(4)- Gross sexual imposition;
>
> 3) R.C. 2919.22(B)(2)- Endangering children;
>
> 4) R.C. 2919.22(B)(2)- Endangering children;
>
> 5) R.C. 2921.04(B)(2)- Intimidation;
>
> 6) R.C. 2921.31(A)- Obstructing official business; and,
>
> 7) R.C. 2919.22(B)- Endangering children.[2]

{¶5} Appellant and his wife pleaded not guilty to the charges at

arraignment.  Their cases were later bifurcated for purposes of trial.  Prior to

Appellant's jury trial, he elected to have a bench trial.  At the

commencement of Appellant's trial, the State of Ohio orally moved to

dismiss both counts of child endangering contained in counts three and four

of the indictment.  The court granted the motion.

{¶6} During Appellant's trial, the State presented testimony from

Brittany Bakenhaster, L.R.'s counselor at the Woodland Center; Dr. Sathish

Jetty, a pediatrician; Holly Wiggins, an investigator for Pike County

---

[2] Counts five and six also charged Amber Rutherford.  Count seven charged only Amber Rutherford.

Children's Services; and Major Evans. Several State's exhibits were admitted into evidence, including Appellant's videotaped interview with Major Evans. At the close of the State's evidence, the defense made a Crim.R. 29 motion as to counts one, two, five, and six of the indictment. The court granted the motion as to count five, intimidation.

{¶7} The defense presented testimony from L.R.'s foster parent, Heidi Harris. Ms. Harris testified in detail about many troubling behaviors she observed in L.R.[3] Some of these behaviors were violent to herself or others. Ms. Harris often observed L.R. "rough-housing" or "brawling" with her brothers. Ms. Harris also testified she saw L.R. remove her Barbie dolls' clothes and rub the dolls together while explaining "that's what you do when you are naked."

{¶8} Appellant also testified in his own defense. Appellant denied ever engaging in any type of sexual activity with L.R. He testified she liked to play rough with her brothers, riding toy trucks downhill and climbing trees. He testified he observed her, 48-hours prior to his interview with Major Evans, "messing with herself with her fingers" and with her Barbie dolls. He testified when he met with Major Evans, he thought he was hopeful that the meeting would lead to getting his children back and

---

[3] During her testimony, Ms. Harris reviewed notes she and her husband had made regarding their observations of L.R. and her brothers while in their care.

reuniting the family.  Appellant explained that he lied to Major Evans during

the interview because he felt trapped and degraded.  He felt he had no choice

and he made the statement incriminating himself so "at least the children

could go back to their mother."  At the close of trial, the court found

Appellant guilty on count one, rape, and count two, gross sexual imposition.

Appellant was found not guilty as to count six, obstructing official business.[4]

{¶9} Appellant was sentenced on April 4, 2017 and resentenced on

April 18, 2017 in order for the court to impose a mandatory period of post-

release control.  This timely appeal followed.  Additional facts gleaned from

the trial testimony are set forth below, where pertinent.

### ASSIGNMENT OF ERROR

I.      "THE TRIAL COURT ERRED BY PERMITTING AN
        UNLICENSED PSYCHOLOGICAL COUNSELOR TO
        TESTIFY ABOUT HEARSAY STATEMENTS THAT
        L.R. ALLEGEDLY MADE."

### STANDARD OF REVIEW

{¶10} "Decisions involving the admissibility of evidence are reviewed

under an abuse-of-discretion standard of review." *State v. Wright,* 4th Dist.

Lawrence No. 16CA24, 2017-Ohio-9041, at ¶ 24, quoting *Estate of Johnson*

---

[4] The April 18, 2017 judgment entry of sentence reflects that count seven of the indictment charged only Amber Rutherford. As explained in *In re Helfrich*, 5th Dist. Licking No.13CA20, 2014-Ohio-1933, at ¶ 35, we may take judicial notice of the Pike County Court of Common Pleas website which reflects that on March 15, 2017, Amber Rutherford pleaded guilty to count six, obstructing official business. On that same date, counts five and seven were dismissed as to Amber Rutherford. *See* http://pikecountycpcourt.org/eservices, accessed April 25, 2018. Therefore, all counts of the indictment have been resolved and no issue exists as to the finality of the April 18, 2017 judgment entry.

*v. Randall Smith, Inc.,* 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22, citing *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032; *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 19.  Thus, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. *State v. Green,* 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.).

{**¶11**} When, however, an appellant alleges that a trial court's evidentiary ruling was " 'based on an erroneous standard or a misconstruction of the law,' " an appellate court reviews the trial court's evidentiary ruling using a de novo standard of review. *Wright, supra*, at ¶ 25, quoting *Wray v. Wessell,* 4th Dist. Scioto Nos. 15CA3724 and 15CA3725, 2016-Ohio-8584, at ¶ 13, citing *Morris* at ¶ 16, quoting *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership,* 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (2nd Dist.1992); *accord Estate of Johnson* at ¶ 22 (reviewing admissibility of evidence by first examining whether, as a matter of law, statute applied, and then once threshold question concerning applicability of statute resolved, reviewing whether trial court abused its discretion); *Med. Mut. of Ohio v. Schlotterer,* 122 Ohio St.3d 181, 2009-

Ohio-2496, 909 N.E.2d 1237, ¶ 13 (stating that "[w]hen a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate"); Painter and Pollis, Ohio Appellate Practice, Appendix G (2015) (stating that although trial court decisions involving the admission of evidence are generally reviewed as a discretionary matter, but they are subject to de novo review if a clear legal rule applies. "For example, a trial court does not have discretion to admit hearsay into evidence").

## LEGAL ANALYSIS

{¶12} In Appellant's sole assignment of error, he essentially asserts that the trial court abused its discretion by admitting inadmissible hearsay evidence into the record. The hearsay statements at issue were allegedly made by L.R. to her counselor, Brittany Bakenhaster, during group therapy. At trial and relevant to this appeal, Appellant objected specifically to Ms. Bakenhaster's testimony that L.R. made the following statements to her:

> "I used to live in Waverly, with my mom and dad. My dad touched me one time, and I got taken away. He knew he would get in trouble after he touched me. He never touched me again."
>
> * * *
>
> "My dad shouldn't have done that to me. *I was told by people that my dad had sex with me because he made me bleed."*(Emphasis added.)

\* \* \*

"[S]ex is for big people, it's not for little kids. That's something that big people do. I don't understand why my dad would do something like that to me. I don't see my dad anymore. The services people took me from my mom and dad and now I live with my foster parents. Emma is my foster mom. I glad (sic) that I am not touched like that anymore. If anybody ever tried to hurt me like that again, I would kick them in the nuts, if they are a boy."

\* \* \*

"I would hurt the woman differently if the woman ever tried to touch me. Nobody's ever going to hurt me like that again."

{¶13} Appellant sets forth the issue for review as to whether psychological counseling is legitimately considered to be medical treatment. However, he further criticizes the hearsay statements as being made by an "unlicensed" psychological counselor. Based upon our review of Ohio law in this area, we find that the hearsay statements admitted into evidence at Appellant's trial were permissible in that the questionable statements were made to a case manager assisting a psychological counseling team and were made for the purposes of diagnosis and treatment of mental issues.

{¶14} Statements made outside of the courtroom, offered at trial to prove the truth of what they assert, are generally inadmissible as "hearsay" unless an exception applies. *State v. Knauff,* 4th Dist. Adams No. 10CA900, 2011-Ohio-2725, at ¶ 27; Evid.R. 801(C); Evid.R. 802; *State v. DeMarco*,

31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987). Out-of-court statements made for purposes of medical diagnosis or treatment are hearsay, but are admissible in court under the hearsay exception provided in Evid.R. 803(4). *Id.* Such statements are only admissible "insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). *Id.*

{¶15} At Appellant's trial, Ms. Bakenhaster began by testifying that she has a bachelor's degree in psychology, a master's degree in school counseling, and a master's degree in professional counseling with pending licensure. Ms. Bakenhaster is employed as a case manager at Woodland Center. Woodland Center is an agency for treatment of children with mental issues by staff psychologists and psychiatrists.

{¶16} Ms. Bakenhaster further testified that Woodland provides individual and group counseling. She began working with L.R. in group counseling at L.R.'s school in January 2016. Children come into the group because of behavioral reasons or trauma-based issues. Ms. Bakenhaster testified when she receives information through counseling, she provides it to her superiors. Ms. Bakenhaster is supervised by staff psychologist Mary Brown.

{¶17} Ms. Bakenhaster testified she had a treatment plan for L.R. and her group. The plan implemented creative measures for helping the children

express the emotional pain they experienced.  Ms. Bakenhaster discussed the

group treatment plan with Mary Brown.  The ultimate purpose for Ms.

Bakenhaster's counseling with L.R. was to help her: (1) have better self-

esteem; (2) understand that there are good people in the world; (3)

understand that she can trust people; (4) learn to communicate positively

with others; and, (5) understand that she can express her thoughts and

concerns in a safe environment.

{¶18} At trial, defense counsel objected to any questioning regarding

discussions L.R. may have had with Ms. Bakenhaster about her father,

Appellant.  Defense counsel referred to Ms. Bakenhaster as an "unlicensed

counselor."  However, the prosecutor argued that Ms. Bakenhaster's

statements were admissible pursuant to Evid.R. 803(4) because she acted as

an assistant gathering information for the purpose of psychological

treatment.  On appeal, Appellant emphasizes that the hearsay statements

were critical to the State's case, given that the only medical testimony

regarding L.R.'s injuries was not specific so as to identify a source of injury,

and also given that Appellant's interrogation by Major Evans was coercive.[5]

---

[5] The State's brief in response provides an in-depth discussion regarding the legitimacy of Major Evans' interview with Appellant.  We first note that parties must comply with the Ohio Rules of Appellate Procedure.  If not, App.R. 12(A)(2) permits us to disregard those assignments of error that are not separately argued. *Prokos v. Hines,* 4th Dist. Athens Nos. 10CA51, 10CA57, 2014-Ohio-1415, at ¶ 63. Here, Appellant did not raise any issue with regard to Major Evans' interview under a separate assignment of error.  "While appellate courts have the option to address two or more assignments of error at once, the parties do not." *In the Matter of B.M.,* 4th Dist. Hocking No. 16CA12, 2017-Ohio-7878, at ¶ 22; *Powell v.*

{¶19} For the reasons which follow, we find the trial court did not abuse its discretion when admitting L.R.'s out-of-court statements to Ms. Bakenhaster, a case manager who provided group counseling for mental health issues to L.R. at her school.  We begin by setting forth the parameters for admission of hearsay statements under Evid.R. 803 (4).  In this court's decision in *State v. Knauff, supra,* we observed that when deciding whether hearsay is reliable enough for admission under Evid.R. 803(4), courts look at several factors. *Id.* at ¶ 28.  We observed:

> "The first 'factor' is the "selfish-motive" doctrine, i.e., "the belief that the declarant is motivated to speak truthfully to a physician because of the patient's self-interest in obtaining an accurate diagnosis and effective treatment." *Id.* quoting *State v. Muttart,* 116 Ohio St.3d 5, 2007–Ohio–5267, 875 N.E.2d 944, at ¶ 34, citing *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988) (Brown, J., concurring). Another factor courts consider is the medical professional's subjective reliance on the statement, because "physicians, by virtue of their training and experience, are quite competent to determine whether particular information given to them in the course of a professional evaluation is 'reasonably pertinent to diagnosis or treatment [,]' and are not prone to rely upon inaccurate or false data in making a diagnosis or in prescribing a course of treatment." *Id.* at ¶ 41, 530 N.E.2d 409, quoting *King v. People* (Colo.1990), 785 P.2d 596, 602. In *Muttart,* the Supreme Court of Ohio observed that the professional reliance factor is of "great import" in cases of child abuse. *Id.*"

---

*Vanlandingham*, 4th Dist. Washington No. 10CA24, 2011-Ohio-3208, at ¶ 24; *Keffer v. Cent. Mut. Ins. Co.,* 4th Dist. Vinton No. 06CA652, 2007-Ohio-3984, at ¶ 8, fn.2.  Since Appellant did not set forth a separate assignment of error and separate arguments regarding the interview, we are permitted to disregard the issue and we hereby choose to do so.

{¶20} In *Knauff* at ¶ 29, we also cited *Muttart's* "non-exhaustive list of additional factors that a court should weigh when considering whether out-of-court statements obtained from a young child are admissible under this exception":

> "(1) Whether medical professionals questioned the child in a leading or suggestive manner and whether the medical professional followed proper protocol in eliciting a disclosure of abuse;
>
> (2) Whether the child had a reason to fabricate, e.g., a pending legal proceeding or bitter custody battle;
>
> (3) Whether the child understood the need to tell the medical professional the truth; and
>
> (4) Whether the age of the child could indicate the presence or absence of an ability to fabricate a story. *Id.* at ¶ 49, 875 N.E.2d 944."

{¶21} In the case presently before us, the trial court initially sustained counsel's objections and required additional foundational testimony.  Ms. Bakenhaster continued, testifying that children are allowed to talk about alleged abuse as part of a treatment plan in order to address their pain. Through "draw therapy," where children are encouraged to draw their parents, the counselors can learn "family dynamics."  Using this information, the treatment plan can address problem behaviors. Psychologists make suggestions based upon what is learned from the "draw" or "play therapy."  Psychologists may question the child's medications, how

the child is progressing, how treatment is affecting the child, and suggest additional resources. The psychologists enter the data she gives them into the database.

**{¶22}** Ms. Bakenhaster encouraged L.R. to express her feelings through draw and play therapy. Ms. Bakenhaster also testified if L.R. or other children made statements during group therapy sessions, she would begin to look for marks or evidence on the body in order to make a further report. If additional evidence supported a disclosure, she would report to Children's Services and discuss with Mary Brown.

**{¶23}** Ms. Bakenhaster testified L.R. disclosed quite a bit of information in March 2016 while Ms. Bakenhaster was conducting a group therapy session at the school and while she was encouraging the children to draw and express what was going on in their lives. She testified that the disclosures L.R. made to her were entered in the database, stored, and reviewed with the staff psychologist as part of her treatment. Ms. Bakenhaster opined that the disclosure showed L.R. was progressing in her treatment and more able to trust her. Ms. Bakenhaster concluded her direct testimony stating she discussed the disclosed information with her supervisor and incorporated the information into L.R.'s treatment plan. Part

of the treatment plan was simply continuing to talk with L.R. about what had happened to her.

{¶24} Appellant argues that L.R.'s statements were used for purposes of psychotherapy but not for medical treatment.  Appellant emphasizes that psychotherapy is not medical treatment under Evid.R. 803(4) because psychotherapists cannot practice medicine.  However, as we observed in our decision in *State v. Wilson,* 4th Dist. Adams No. 99CA672, 2000 WL 228242 (Feb. 18, 2001), at *7, Evid.R. 803(4) is not limited to statements relating to physical condition.  Statements made during the course of a psychological examination may also be admissible provided that the purpose of the examination is to diagnose or treat the victim's psychological condition. *Id.* at *7. *See State v. Vaughn* (1995), 106 Ohio App.3d 775, 780; *State v. McWhite*, 73 Ohio App.3d (6th Dist.1991), 323, 329-330.  And, Evid.R. 803(4) does not require that the statements be made to a specific type of health care provider as long as made for purposes of diagnosis or treatment. *Id.* at *7.  Thus, a statement may still be within the scope of the exception if it is directed to other physical and mental health professionals, including nurses, psychiatrists, psychologists, and therapists. *Id.,* citing *State v. Chappell* (1994), 97 Ohio App.3d 515, 530, 646 N.E. 2d 9441 (8th Dist.1994).

{¶25} We considered the requirements of Evid.R. 803(4) in an older case in this district, *State v. Robison*, 4th Dist. Pickaway No. 85-CA-12, 1986 WL 11935 (Oct. 22, 1986).  Robison was found guilty of felonious sexual penetration and felonious assault after his natural daughter, aged seven, was rushed to the hospital bleeding profusely from the vagina, and with multiple bruising on her body and extremities.  On appeal, Robison contended that Evid.R. 803(4) did not include statements made to a psychologist.  We disagreed.

{¶26} We pointed out the record revealed that the child was referred to the county mental health facility by her guardian ad litem and by the county children's services for psychological evaluation and therapy.  She has been diagnosed as having an over anxious disorder, and as needing psychological treatment.  The child's eventual statement came as a natural result of therapy.

{¶27} We disagreed with Robison's contention that Evid.R. 803(4) does not include statements made to a psychologist.  We observed that Evid.R. 803(4) does not specify to whom the statement must be made. Further, the statements were made as part of the emotional healing process, and as such, were made for the purposes of medical treatment.

{¶28} Robison also contended his identity as the perpetrator of the girl's injuries was not a statement that is pertinent to diagnosis or treatment. We again disagreed, observing at *5:

> "Careful consideration of the purpose and scope of the child's therapy leads us to believe that in this instance, the identity of the perpetrator is pertinent to medical diagnosis. * * * An important part of diagnosis and treatment is to discern the source of injury and trauma to a child, and to isolate the child from that influence. 4 Weinstein, Evidence (1981) 803(4)(01) p. 803-129 states:
> '* * * in the case of a statement made for treatment the test is not only whether the declarant thought it relevant (thereby establishing reliability), but also whether a doctor would have reasonably relied upon such statement in deciding upon a course of treatment.' We believe Dr. Jones would have a responsibility to rely upon the child's statement in shaping the course of therapy for her, and in making any recommendations as to her placement in a foster home or a return to her family. In a child abuse case like the one at bar, the identity of the perpetrator makes a marked difference in the doctor's ability to help the child, and is integral to medical diagnosis and treatment."

{¶29} Our later decision in *Knauff, supra,* provided similar general guidance. Knauff was convicted by a jury of rape of his five-year-old daughter. On appeal, he argued a videotape interview of his daughter by a social worker was not admissible as it constituted hearsay. After receiving a report from the Adams County Sheriff's office, a social worker, Cecelia Friehofer at the Mayerson Clinic at Cincinnati Children's Hospital, evaluated the child and recorded a one-hour interview. Knauff argued his daughter

could not have known her statements on the videotape were made for the purposes of medical treatment.

{¶30} At trial Friehofer discussed the general methodology behind a "forensic interview. She explained that one purpose of the lengthy interview was to gain as much information as possible so that the child would not have to discuss the abuse with others. Another purpose of the interview was to gain information so that medical staff could make appropriate decisions concerning necessary physical or mental health treatment. Because Knauff's daughter advised Friehofer: "[T]hat's why I'm here – to see a doctor," we found her statement satisfied the foundational requirement.

{¶31} Knauff also contended that many other questions and answers in the interview went beyond what was necessary to provide the child's medical provider information about physical symptoms. Knauff in essence disputed whether the professional reliance component of reliability was present because the Friehofer and the child discussed other topics such as weather, school, and locations where there abuse occurred. We observed, however, that Friehofer testified about additional purposes of the interview such as to provide recommendations not only for a course of physical treatment but also for recommendations on "therapy" and "psychological assistance." We observed:

"Friehofer used the hour-long interview with the then five-year-old victim to gain an understanding of the type and extent of abuse D.K. experienced. True, many of her answers went beyond what was necessary to conduct a basic physical examination. But all of D.K.'s statements, even those tangential or unrelated to the physical effects of the abuse, reasonably assisted Friehofer and subsequent medical professionals with the information necessary to prescribe a proper course of physical and mental treatment for the child. In fact, the record reflects that D.K. underwent at least two months of counseling sessions prior to the trial."

**{¶32}** At trial, the State directed the trial court to *State v. Fread,* 12th Dist. Butler No. CA2013-03-045, 2013-Ohio-5206. Fread appealed his conviction for domestic violence perpetuated against his 13-year-old step-son, C.R. After speaking with police, C.R. had given a statement to a psychologist, Dr. Knight. One of his arguments on appeal was that Dr. Knight's testimony regarding C.R.'s statements to him was inadmissible hearsay not subject to the 803(4) exception on the basis of medical diagnosis or treatment. The *Fread* court observed at ¶ 18:

"This court has previously held that statements made during the course of a psychological examination are admissible to the same extent as statements made to a treating physician, provided that the purpose of the psychological examination is the diagnosis and treatment of the victim's psychological condition, rather than gathering evidence against the accused. *State v. Vaughn,* 106 Ohio App.3d 775, 780 (12th Dist.1995). In addition, the determination of whether Evid.R. 803(4) applies is based upon the purpose for which the statement was made rather than whether the person to whom the statement was made subsequently testifies as a lay witness or an expert. Finally, it is irrelevant whether diagnosis or treatment actually

occurs for Evid.R. 803(4) to apply. All that is required is that the statements were made for the purpose of diagnosis or treatment."

**{¶33}** Appellant has directed us to the Sixth District's decision in *State v. McWhite.* 73 Ohio App.3d 323, 329, 597 N.E.2d 168 (6th Dist.1991), arguing that *McWhite* cautioned against a "literal reading of Evid.R. 803(4) and, therefore, Evid. R. 803(4) should be limited to statements made to medical personnel. Upon review of *McWhite,* we fail to see how this case supports Appellant's argument. In 1988, McWhite was indicted on two counts of aggravated murder of his girlfriend and her minor daughter. McWhite's 3-year-old son Jake was found at the murder scene with marks on his neck suggesting attempted strangulation. McWhite was eventually tried and convicted by a jury.

**{¶34}** Dr. Scully, a clinical psychologist, testified at trial that he had treated Jake for emotional and behavioral problems and that during treatment sessions Jake mentioned the events leading up to the murders of his mother and sister. Jake's recollections were crucial in that he was the only witness present other than the defendant and a co-defendant when Jake's mother and sister were killed. However, Jake could not testify as a witness since he was found incompetent. Before Dr. Scully took the stand, defense counsel made a continuing objection on the record to anything Dr.

Scully would testify to regarding statements made to him by Jake.  The trial judge noted on the record that the objection was to apply to all testimony of Dr. Scully.  Dr. Scully testified to various incriminating statements Jake told him during counseling.

{¶35} On appeal, McWhite challenged Dr. Scully's testimony on two grounds, one being that the trial court allowed Dr. Scully to opine as to Jake's veracity.  The trial court found merit to this argument.  Relevant however to this appeal, McWhite also argued that the trial court erred in admitting Dr. Scully's testimony under Evid.R. 803(4) since Dr. Scully was a clinical psychologist and not a medical doctor.  The *McWhite* court commented that Evid.R. 803(4) does not explicitly limit its scope to statements regarding the declarant's bodily condition. Weissenberger's Ohio Evidence (1991) 55, Section 803.48.  *McWhite* at 73 Ohio App.3d 329. *McWhite* further noted that the Staff Note to Evid.R. 803(4) is silent on the issue of whether or not a clinical psychologist's testimony is admissible. *Id.*

{¶36} In its opinion, the *McWhite* court discussed at length the compelling interest safeguarding the physical and psychological well-being of minor victims.  Citing *State v. Boston,* 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), the *McWhite* court noted at 329:

> "As child abuse cases increase throughout the country at an
> alarming rate it has become apparent that psychological

counseling is just as important in treating child victims of crime as is medical treatment for the child's physical injuries. To unequivocally exclude clinical psychologists and other professionals from the scope of Evid.R. 803(4) is to ignore the reality that these people are trained professionals qualified to render objective opinions on the probability that a child has been subjected to abuse. These professionals play an invaluable role in cases involving very young children like Jake McWhite. Moreover, the language of Evid.R. 803(4) focuses on the declarant's motivation in making the statement, rather than to whom it was made. We believe that the syllabus of *Boston* does not preclude the testimony of clinical psychologists and other professionals in cases involving child victims of crime. Rather, it is in keeping within the spirit and purpose of Evid.R. 803(4)."

{¶37} McWhite further contended that at the time of his treatment, Jake was too young to understand the necessity of being truthful with Dr. Scully. Citing our decision in *Robison,* the appellate court pointed out that Jake met with Dr. Scully approximately one hundred times over a one-year period. As he progressed in his treatment, young Jake began to refer to Dr. Scully as "Dr. Terry," clearly recognizing the doctor as an authority figure. We believe as in *Robison, supra,* that at some level young Jake understood that he was receiving help from Dr. Scully and he was therefore motivated to tell the truth. The *McWhite* court found no merit to the appellant's argument that the hearsay statements of Jake were improperly admitted because Dr. Scully was not a medical doctor.

{¶38} In *State v. Jett,* 11th Dist. Portage No. 97-P-0023, 1998 WL 258166, the appellate court also cited the principles set forth in *Chappell,*

*Vaughn, and McWhite.* Jett was convicted by a jury of the sexual penetration of a four-year-old girl. The *Jett* court noted that although most hearsay declarations offered into admission under Evid.R. 803(4) will have been made to a physician by a patient seeking medical diagnosis or treatment, the rule does not require that such a declaration be made to a physician or be about bodily condition. *See* Weissenberger, Ohio Evidence (1997) 403-404, Sections 803.47 and 803.48. There the victim's mother contacted a psychologist regarding defiant behavior of the victim and her young brother. Eventually, the victim told the psychologist that the mother's live-in boyfriend had touched her private parts.

{¶39} The *Jett* court observed that a trial court must consider the circumstances surrounding the making of the hearsay statement. However, *Jett* ultimately concluded that since there was insufficient evidence indicating that the victim was aware that her statements were made for the purpose of psychological diagnosis or treatment, the statements should have been excluded on the basis that they fell outside the scope of Evid.R. 803(4). In *Jett,* the trial court's judgment was reversed and Jett's case remanded.

{¶40} In *State v. Tillman,* 12th Dist. Butler No. CA2003-09-2432004-Ohio- 6240, Tillman was indicted for rape of a child under ten and gross sexual imposition after M.C., a friend's child, told a social worker that

someone had "put a finger in her."  He was convicted by a jury.  On appeal, Tillman argued the trial court erred in permitting the state's psychological assistant to testify regarding his evaluation, diagnosis, and various hearsay statements made by M.C.

{¶41} While this case differs in that the witness was qualified as an expert, the appellate court referenced the same principles as previously cited in *Vaughn. See also State v. Goins*, 12th Dist. Butler No. CA2000–09–190, 2001–Ohio–8647.  The appellate court thus found that based upon the circumstances surrounding the social worker's interview with M.C., the interview with the victim was conducted so as to recommend treatment for the victim, even though he may not have made the ultimate diagnosis. *Id.* at 24.

{¶42} Applying the *Muttart* factors in this case, we find L.R.'s statements were made in the context of group therapy and for the purpose of diagnosis and treatment of the mental issues she had been having.  Our review of the record demonstrates an absence of evidence to suggest Ms. Bakenhaster questioned L.R. in a leading or suggestive manner.  L.R. made the statements to Ms. Bakenhaster in group counseling.  Ms. Bakenhaster had facilitated discussion about family dynamics through draw and play therapy.

{¶43} Furthermore, Ms. Bakenhaster's testimony revealed the statements were made after approximately 2 months in therapy. Ms. Bakenhaster opined that she had established a level of trust at the time L.R. made her statements, which had not been previously established. Similar to the analysis set forth in *McWhite, supra,* we perceive this fact as suggesting that L.R. understood the need to tell the truth and that she was telling the truth for the purpose of receiving some sort of help.

{¶44} However, Appellant has also pointed out that Ms. Bakenhaster is not a licensed psychologist or psychotherapist. A similar issue was raised in our own decision in *State v. Wilson, supra.* Wilson was charged with one count of penetration and one count of rape based on allegations from his five-year-old former stepdaughter Alexandria. Alexandria and her mother testified at trial. Her mother testified she first took the child to a psychotherapist, Mrs. Harffman, when her behavior changed. Ms. Harffman testified that Alexandria revealed during a counseling session that she had been sexually abused. Defense witnesses however testified to instances of sexual activity they had observed. Wilson testified and denied sexually abusing Alexandra. He was convicted by a jury of both charges.

{¶45} On appeal, Wilson challenged Alexandria's competency to testify, the admissibility of certain exhibits, the sufficiency of the evidence,

and his consecutive sentence.  Relevant to this appeal, Wilson argued that

the trial court erred in admitting State's Exhibit 3, an examination report

from the SAM Clinic prepared by Amy Herbert.  The trial court found the

exhibit admissible under Evid.R. 803(4), essentially summarizing that the

court may admit a child's statements if they are made for purposes of

medical diagnosis or treatment and there is no evidence to cast doubt upon

the child's motivation for making the statements.

{¶46} Wilson specifically argued that the exhibit should not have been

admitted because there was no testimony regarding the qualifications of

Amy Herbert.  We reiterated the principles of *Chappell, Vaughn, and*

*McWhite.*  We concluded, however that:

> "As to State's Exhibit 3, there was testimony from Ms. Herbert
> that she was employed as a graduate intern at the SAM Clinic
> and that her duties were to interview Alexandria and then
> discuss Alexandria's statements with the doctor for purposes of
> her examination. Furthermore, State's Exhibit 3 includes Ms.
> Herbert's signature followed by the letters LSW, which
> indicates that Ms. Herbert is a licensed social worker. *See State*
> *v. Dumas* (Feb. 19, 1999), Franklin App. No. 98AP-581,
> unreported (holding that statements made to a social worker
> whose duty was to interview children and provide the
> information to the medical staff were admissible pursuant to
> Evid.R. 803(4)). Ms. Herbert was acting as part of the medical
> team for purposes of treating Alexandria. Both Ms. Harffman
> and Ms. Herbert are licensed social workers who were
> diagnosing and treating Alexandria. The fact that they are not
> medical doctors does not per se require exclusion of the
> reports." *Wilson, supra,* at *7.

{¶47} In the present case, although Ms. Bakenhaster was not a licensed psychologist or psychotherapist, she was acting as part of a medical team for purposes of treating L.R. Ms. Bakenhaster testified as part of her employment, she conducted group counseling and any information she received regarding L.R. or any other child in the group, was entered into a database. Ms. Bakenhaster and her supervisor, the staff psychologist, professionally relied on the statements in reviewing L.R.'s treatment plan. Under these circumstances, we do not find the hearsay statements were improperly admitted.

{¶48} For the foregoing reasons, we find no error or abuse of discretion by the trial court's admission of L.R.'s out of court statements. As such, we overrule the sole assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.:  Concur in Judgment and Opinion.

For the Court,

BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**