[Cite as *State v. McCluskey*, 2018-Ohio-4859.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 17CA3604 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| ERIC MCCLUSKEY, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 12/04/18** |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Nikki Trautman Baszynski, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Assistant Ross County Prosecuting Attorney, Chillicothe, Ohio, for Appellee.
_____

McFarland, J.

{¶1} This is an appeal from a Ross County Court of Common Pleas judgment entry convicting Appellant, Eric McClusky, of one count of felonious assault, a second-degree felony in violation of R.C. 2903.11, one count of endangering children, a second-degree felony in violation of R.C. 2919.22, and one count of assault, a first-degree misdemeanor in violation of R.C. 2903.13. On appeal, Appellant contends that the trial court erred when it admitted statements made to medical professionals by the three-year-old

victim that were irrelevant to medical diagnosis or treatment. Here we conclude that Appellant failed to preserve this issue for appeal, and because we fail to find plain error in the trial court's admission of the statements at issue, Appellant's sole assignment of error is overruled. Accordingly, the decision of the trial court is affirmed.

## FACTS

{¶2} Appellant was indicted on January 6, 2017 by a Ross County grand jury on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11, one count of endangering children, a second-degree felony in violation of R.C. 2919.22, and one count of assault, a first-degree misdemeanor in violation of R.C. 2903.13. The indictment alleged that Appellant knowingly caused serious physical harm to the victim, J.H., on or about November 10-11, 2016, that he recklessly abused a child under age eighteen, which resulted in serious physical harm to the child involved, and also that he knowingly caused physical harm to another, R.H. The record before us indicates that R.H. is Appellant's girlfriend and J.H. is R.H.'s three-year old son.

{¶3} The indictment stemmed from an investigation which was triggered after J.H. was transported to Adena Medical Center via ambulance, from his home, with serious injuries that medical staff ultimately determined

were the result of non-accidental trauma, or child physical abuse. A review of the record reveals that the child resided with his mother and grandmother at his grandmother's residence at the time he was injured. Grandmother left and went to work on the night in question and the child was put to bed in a bedroom with Appellant while his mother slept on the couch. The following morning when Grandmother returned from work and was making breakfast, Appellant came out of the bedroom, ate breakfast, and then stated that someone might want to check on the child. When R.H. and Grandmother checked, they discovered the child had wet the bed, his face was swollen, he had bruising around his eyes and he was not acting normal. Thereafter, as R.H. began trying to care for her child, an altercation ensued between Appellant and R.H., resulting in Appellant knocking a plate of food out of R.H.'s hands and head-butting her, causing an injury to her eye and cheek bone. Ultimately an ambulance was called for the child, despite protests by Appellant, who was essentially downplaying the child's injuries and stating he would be blamed because he was the only male there.

{¶4} The record indicates that both R.H. and Grandmother reported to paramedics that the child had suffered an injury while jumping on stumps. The child also stated he had fallen while playing. However, upon arrival to the emergency room, the child informed Dr. Jason Collins that "Eric did this

to me in the bathroom" in response to Dr. Collins asking him what happened, or who had done this to him.  Noting extreme swelling of the child's face and head, Dr. Collins ordered a CT scan of the head.  Thereafter Nurse Heidi Norman, the sexual assault nurse examiner (SANE), was asked to evaluate the child.  Upon noting multiple bruises, varying in color and degree, throughout the child's body, as well as severe swelling of the child's head, the nurse asked the child what happened.  The child asked if he was safe, and when reassured he was safe he informed her that "Eric hit my head off the spicket [sic] in the bath tub over and over again until I fell asleep and when I woke up he was hitting my head off the bathroom door handle."  The child also told the nurse that "If Eric doesn't do it then his mommy does it to him."  As he was telling her this he held up his fist, which he had to support with his other hand.  After the nurse's evaluation additional testing was ordered which revealed a wrist fracture.  The record also indicates law enforcement was present and appeared to have been in the room while the nurse was taking photographs for inclusion in the medical record.

{¶5} The child was thereafter transferred to Nationwide Children's Hospital in Columbus, Ohio.  Upon arrival he was examined by Dr. Heather Williams.  Additional testing ordered by Dr. Williams revealed the child also had a fractured tooth and additional fractures on the hand opposite of the

fractured wrist. Her examination resulted in a determination that the injuries sustained by the child were the result of non-accidental trauma and that her medical diagnosis was for "child physical abuse." Social Worker Tishia Richardson also spoke with the child while he was at Nationwide Children's Hospital. The child told Richardson that his brother, C.H., hurt him and indicated his mother hurt him with her foot.[1] When Richardson asked the child if "Eric did something" the child nodded yes. Richardson then asked the child to tell her about it but the child remained silent. The child was thereafter referred to the Child Protection Center where he was interviewed by Ashley Muse. The record indicates the interview with Muse was ended because the child was not participating.

{¶6} The matter went to trial on May 23rd and May 24th, 2017. The State presented the testimony of Toni Stinson (grandmother), Eric Price (paramedic), Heidi Norman (Adena Medical Center Emergency Room SANE), R.H. (the child's mother), Tishia Richardson (Nationwide Children's Hospital Social Worker), Dr. Heather Williams (Nationwide Children's Hospital Physician), and Detective John Winfield (Ross County Sheriff's Office) in support of its case. The State also presented video

---

[1] The record indicates C.H. was the child's sibling and also resided in the house with J.H., R.H. and Grandmother. R.H. has four other children between the ages of eight years old and four months old who resided in the house also. It appears that C.H. was six years old at the time of trial and would have been five years old at the time the child made the statements at issue.

deposition testimony of Dr. Jason Collins (Adena Medical Center Physician). Additionally, Appellant presented one witness in his defense, Ashley Muse (Child Protection Center Interviewer). The detailed testimony by the individuals pertinent to this appeal will be fully discussed below under our analysis of Appellant's assignment of error.

{¶7} The jury ultimately found Appellant guilty on all counts, as charged in the indictment. The trial court merged counts one and two for purposes of sentencing and sentenced Appellant to a seven-year prison term on count one. The trial court sentenced Appellant to a six-month term of imprisonment on count three, and ordered the prison terms imposed on counts one and three to be served concurrently. The trial court also sentenced Appellant to a mandatory three-year term of post-release control. It is from the trial court's June 27, 2017 judgment entry of sentence that Appellant now brings his timely appeal, setting forth one assignment of error for our review.

ASSIGNMENT OF ERROR

"I.   THE TRIAL COURT ERRED WHEN IT ADMITTED STATEMENTS MADE TO MEDICAL PROFESSIONALS BY THE THREE-YEAR-OLD VICTIM THAT WERE IRRELEVANT TO MEDICAL DIAGNOSIS OR TREATMENT."

Argument

{¶8} In his sole assignment of error, Appellant contends the trial court erred when it admitted statements made to medical professionals by the three-year-old victim that were irrelevant to medical diagnosis or treatment. Appellant asserts that the issue presented for review involves whether, under Evid.R. 803(4), a court may admit hearsay statements if they were made for a medical purpose, before considering the "totality of circumstances." Appellant further questions whether the trial court erred when it admitted statements from a three-year-old, which were elicited for the purpose of identifying the person who caused the injuries, when the child's statements were inconsistent about the cause of injuries. Appellant claims he was prejudiced as a result of the erroneous admissions of the child's statements. Thus, Appellant's sole assignment of error asserts a violation of state evidentiary rules. The State contends the statements at issue were properly admitted under the Evid.R. 803(4) exception to the hearsay rule, as the child's statements were made to medical professionals for the purposes of medical diagnosis and treatment.

Preservation of Error for Appeal

{¶9} We initially note that the statements complained of by Appellant were the subject of a motion to exclude filed prior to trial. A hearing was

held on the motion two months prior to trial and the trial court issued a

ruling from the bench denying the motion to exclude.  Although not

specifically titled as such, the motion to exclude was essentially a pre-trial

motion in limine.  Evid.R. 103 governs rulings on evidence and the version

in effect at the time of both the motion hearing and the trial provided, in

pertinent part, as follows:

> "(A)   Effect of Erroneous Ruling.  Error may not be predicated
>
> upon a ruling which admits or excludes evidence unless a
>
> substantial right of the party is affected; and
>
> (1)     Objection.  In case the ruling is one admitted evidence, a
>
> timely objection or motion to strike appears of record stating
>
> the specific ground of objection, if the specific ground was not
>
> apparent from the context; or
>
> (2)     Offer of proof.  In case the ruling is one excluding
>
> evidence, the substance of the evidence was made known to the
>
> court by offer or was apparent from the context within which
>
> questions were asked.  Offer of proof is not necessary if
>
> evidence is excluded during cross-examination."

If a trial court denies a motion in limine, such a decision is simply a

tentative, interlocutory ruling as to whether certain evidence is admissible.

*See State v. Grubb*, 28 Ohio St.3d 199, 201, 503 N.E.2d 142 (1986); *also see e.g. Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004–Ohio–5719, 816 N.E.2d 1049, at ¶ 35.  To properly preserve an objection to that specific evidence for purposes of appeal, an objection to the court's ruling must be made when the evidentiary issue arises at trial. *State v. Hall*, 57 Ohio App.3d 144, 145, 567 N.E.2d 305 (8th Dist.1989); *State v. Jackson*, 4th Dist. Washington No. 12CA16, 2013–Ohio–2628, ¶ 19; *State v. Hafer*, 4th Dist. Hocking No. 87CA21, 1988 WL 118700 (Nov. 3, 1998).

{¶10} Here, although Appellant's pre-trial motion in limine was denied, he failed to further lodge objections to the admission of the statements at trial.  As will be discussed in more detail below, the record reflects that several medical professionals, including an emergency room doctor, a SANE nurse, and a social worker each testified to statements made to them by the child victim herein while he was a patient at Adena Medical Center and Nationwide Children's Medical Center, and that Appellant failed to object to their testimony during trial.  Further, many of the statements testified to by these individuals were contained in the medical records, which were not expressly included in the pre-trial motion in limine, and which were admitted without objection during the trial.  Thus, we conclude Appellant has waived all but plain error with respect to the admission of the

child's statements, which were admitted through testimony, as well as medical records. *See* Crim.R. 52(B); Evid.R. 103(A)(1) & (D).[2]

{¶11} Generally, appellate courts take notice of plain error under Crim.R. 52(B) with the utmost caution, only under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Gardner*, 118 Ohio St.3d 420, 2008–Ohio–2787, 889 N.E.2d 995, ¶ 78; *State v. Patterson*, 4th Dist. Washington No. 05CA16, 2006–Ohio–1902, ¶ 13. Plain error should be noticed if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *State v. Bundy*, 4th Dist. Pike No. 11CA818, 2012–Ohio–3934, 974 N.E.2d 139, ¶ 66. The Supreme Court of Ohio has stated that appellate courts should conservatively apply plain-error review, and notice plain error in situations that involve more than merely theoretical prejudice to substantial rights. *State v. Steele*, 138 Ohio St.3d 1, 2013–Ohio–2470, 3 N.E.3d 135, ¶ 30.

{¶12} We further note that Appellant seems to concede in his appellate brief that he has waived all but plain error by urging us to employ a review under Crim.R. 52(B), which governs plain error. However, in response to the State's notation in its brief that Appellant failed to properly object to the allegedly offending statements at trial, Appellant then argued in

---

[2] The version of Evid.R. 103 in effect at the time of the underlying proceedings provided in section (D) that "[n]othing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

his reply brief that the motion in limine was sufficient to preserve the error for appeal. Appellant contends that Evid.R. 103(A) further states as follows:

"Once the court rules definitely on the record, either before or at trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."

{¶13} Nonetheless, Appellant's argument is without merit. Although Evid.R. 103 was indeed revised and does currently contain this additional language, the effective date of the revision was July 1, 2017, approximately two months after Appellant's jury trial took place. Thus, this provision is not applicable in the present case and did not act to preserve the error for appeal. Instead, the version of the rule with an effective date of July 1, 1980 was in effect and required further objection at trial after the denial of the motion in limine in order to preserve error for review on appeal. Thus, we must employ a plain error analysis.

Standard of Review

{¶14} Generally, "[d]ecisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review." *State v. Wright*, 2017-Ohio-9041, 101 N.E.3d 496, ¶ 24 (4th Dist.); quoting *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22; citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160,

840 N.E.2d 1032; *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972

N.E.2d 528, ¶ 19.  When, however, an appellant alleges that a trial court's

evidentiary ruling was " 'based on an erroneous standard or a

misconstruction of the law,' " an appellate court reviews the trial court's

evidentiary ruling using a de novo standard of review. *Wright, supra,* at

¶ 25; quoting *Wray v. Wessell*, 4th Dist. Scioto Nos. 15CA3724 and

15CA3725, 2016-Ohio-8584, ¶ 13; citing *Morris* at ¶ 16; quoting

*Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d

340, 346, 604 N.E.2d 808 (2nd Dist.1992); *Med. Mut. of Ohio v. Schlotterer*,

122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13 (stating that

"[w]hen a court's judgment is based on an erroneous interpretation of the

law, an abuse-of-discretion standard is not appropriate"); Painter and Pollis,

Ohio Appellate Practice, Appendix G (2015) (stating that although trial court

decisions involving the admission of evidence are generally reviewed as a

discretionary matter, but they are subject to de novo review if a clear legal

rule applies.  "For example, a trial court does not have discretion to admit

hearsay into evidence").

{¶15} Here, however, as set forth above, Appellant failed to preserve

this issue for review and, as a result, this Court is limited to a plain error

review.  "To constitute plain error, a reviewing court must find (1) an error

in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *State v. Lewis*, 4th Dist. Ross No. 14CA3467, 2015-Ohio-4303, ¶ 9; quoting *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 31 (4th Dist.); citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Legal Analysis

{¶16} Now, as to the substantive portion of this appeal, we begin by considering the statements Appellant claims were admitted in error by the trial court. Appellant claims that several statements made by the child victim herein, age three, to various medical professionals while he was being treated in the emergency room at Adena Medical Center and then at Nationwide Children's Hospital after he was transferred, constituted inadmissible hearsay. Appellant does not, however, claim a violation of his right of confrontation. These statements complained of are as follows:

1. "On November 11, 2016, at Adena, J.H. told Dr. Jason Collins that 'Eric did this to me in the bathroom.' "

2. "On November 11, 2016, at Adena, J.H. told Nurse Heidi Norman that 'Eric hit me in the head, with his fist and

when he doesn't hit me, mommy does.'  He also told

Nurse Norman 'I get hit with the door handle by mommy

and Eric.' "

3.      "On November 12, 2016, at Nationwide Children's

Hospital, J.H. told Social Worker Tishia Robinson [sic]

that his brother C.H. hurt him.  He also told Ms.

Richardson that his mother hurt him with her foot.  When

asked whether Mr. McCluskey had hurt him, J.H.

remained silent."

4.      "On November 18, 2016, at the Child Protection Center,

J.H. was asked by Interviewer Ashley Muse whether Eric

punched him.  J.H. shook his head no.  He was asked

again, and again he shook his head no."[3]

As indicated above, the State contends the child's statements were properly

admitted under Evid.R. 803(4) as statements made for medical diagnosis or

treatment.

{¶17} Statements made outside of the courtroom, offered at trial to

prove the truth of what they assert, are generally inadmissible as "hearsay"

unless an exception applies. *State v. Knauff*, 4th Dist. Adams No. 10CA900,

---

[3] We do not address Appellant's argument regarding the testimony of Ashley Muse as a review of the record reveals that the State did not call Ms. Muse as witness at trial.  Ms. Muse was a defense witness. Thus, any error in the admission of her testimony was invited by Appellant.

2011-Ohio-2725, at ¶ 27; Evid.R. 801(C); Evid.R. 802; *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987). Out-of-court statements made for purposes of medical diagnosis or treatment are hearsay, but are admissible in court under the hearsay exception provided in Evid.R. 803(4). *Id.* Evid.R. 803(4) provides as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

Such statements are only admissible "insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). *Id.*

{¶18} Appellant contends that the statements admitted at trial through the testimony of these medical professionals, to the extent they served to identify Appellant as the perpetrator, were not pertinent to medical diagnosis and treatment, and further did not satisfy the reliability threshold of Evid. R.

803(4), as the child made inconsistent statements as to how his injuries occurred and who caused them. In deciding whether hearsay is reliable enough for admission under Evid.R. 803(4), courts look at several factors. As this Court recently noted in *State v. Rutherford*, 4th Dist. Pike No. 17CA883, 2018-Ohio-2638, at ¶ 19:

> " 'The first "factor" is the "selfish-motive" doctrine, i.e., "the belief that the declarant is motivated to speak truthfully to a physician because of the patient's self-interest in obtaining an accurate diagnosis and effective treatment." *Id.* quoting *State v. Muttart*, 116 Ohio St.3d 5, 2007–Ohio–5267, 875 N.E.2d 944, at ¶ 34, citing *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988) (Brown, J., concurring). Another factor courts consider is the medical professional's subjective reliance on the statement, because "physicians, by virtue of their training and experience, are quite competent to determine whether particular information given to them in the course of a professional evaluation is 'reasonably pertinent to diagnosis or treatment [,]' and are not prone to rely upon inaccurate or false data in making a diagnosis or in prescribing a course of treatment." *Id.* at ¶ 41, 530 N.E.2d 409, quoting *King v. People*

(Colo.1990), 785 P.2d 596, 602. In *Muttart*, the Supreme Court

of Ohio observed that the professional reliance factor is of

"great import" in cases of child abuse. *Id.*' " Quoting *State v.*

*Knauff*, *supra*, at ¶ 28.

**{¶19}** The *Muttart* Court also provided a non-exhaustive list of

additional factors that a court should weigh when considering whether out-

of-court statements obtained from a young child are admissible under this

exception:

" '(1) Whether medical professionals questioned the child in a

leading or suggestive manner and whether the medical

professional followed proper protocol in eliciting a disclosure

of abuse;

(2) Whether the child had a reason to fabricate, e.g., a pending

legal proceeding or bitter custody battle;

(3) Whether the child understood the need to tell the medical

professional the truth; and

(4) Whether the age of the child could indicate the presence or

absence of an ability to fabricate a story.' " *Rutherford* at ¶ 20;

quoting *Knauff* at ¶ 29; quoting *Muttart* at ¶ 49.

{¶20} In this case, for the reasons that follow, we cannot conclude that the trial court committed plain error in admitting the statements of the medical professionals listed above. First, we conclude the statement made by the child to Dr. Jason Collins at the emergency room at Adena Medical Center was admissible as a statement made for medical diagnosis and treatment. The transcript from the motion hearing held before trial reveals that Dr. Collins, in order to determine "the mechanism of injury," asked the child either "what happened" or "who did this to him" and the child responded "Eric did this to me in the bathroom." When asked why the name of the individual who inflicted the injury was important, Dr. Collins answered "* * * it's important we find out who it is so we make sure that we don't discharge the child in the hands that could have done this to them to protect the child who is unable to protect themselves." Dr. Collins further testified that it was important to understand whether an adult or a child inflicted the injuries, because if it was an adult "we'd order extensive cat-scans because there could be a lot more internal injuries that you wouldn't pick up on. Like just simple x-rays, if it was another child pushing him or hitting them." Dr. Collins conceded on cross-examination that the name of the actual adult was not medically necessary strictly for medical treatment, but maintained it was pertinent as to the question of whether "am I

discharging him back into the same person that caused the injuries." Dr. Collins further testified that based upon the child's statement that Appellant injured him, he ordered CT scans of the child's brain and spine and made the decision to transport him to Nationwide Children's Hospital.

{¶21} With respect to the part of the child's statement that identified Appellant as the perpetrator, statements by children regarding the identity of their abusers are routinely admitted as being pertinent to medical diagnosis and treatment, especially in situations involving sexual abuse. Evid.R. 803(4) (provides for admission of statements that describe "the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment"); *see also State v. Rutherford*, *supra*, at ¶ 28; citing *State v. Robinson*, 4th Dist. Pickaway No. 85-CA-12, 1986 WL 11935 (Oct. 22, 1986). Further, in *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 32, the Supreme Court of Ohio noted that in child sexual abuse cases, "information regarding the identity of the perpetrator, the age of the perpetrator, the type of abuse alleged, and the time frame of the abuse allows the doctor or nurse to determine whether to test the child for sexually transmitted infections." Just as the identity of the perpetrator is relevant or pertinent in the area of sexual

abuse of children, we believe it is just as pertinent in the area of physical abuse of children.

{¶22} Based upon the foregoing, we conclude the manner in which the doctor questioned the child was not leading or suggestive. Further, there are no factors present here to suggest the child had a motive to fabricate. The child made the statement to the physician in answer to a direct question and made the statement after being transported to the emergency room via ambulance, which setting lends itself to a determination that the child understood, to the extent a three year old can understand, the need to be truthful. Finally, the young age of the child here, in our view, would indicate the absence of an ability to fabricate. As such, we conclude the statement the child made to Dr. Collins in the emergency room was admissible as a statement made for purposes of medical diagnosis and treatment and was properly admitted under Evid.R. 803(4).

{¶23} Second, we conclude the statements made by the child to Nurse Heidi Norman at the emergency room at Adena Medical Center were admissible as statements made for medical diagnosis and treatment. Appellant challenges the admission of two different statements the child made to Nurse Norman, 1) "Eric hit me in the head, with his fist and when he doesn't hit me, mommy does;" and "I get hit with the door handle by

mommy and Eric." Appellant challenges the part of the statements identifying him as the perpetrator, and also points to the child's inconsistency regarding who inflicted his injuries, suggesting that the statements were unreliable. Appellant also argues the nurse's interview of the child was not for medical purposes, claiming that a police detective was in the room when she was talking to the child.

{¶24} We initially note that the record contradicts Appellant's assertion regarding the presence of the detective. Nurse Norman testified that the only person present in the room with her when she spoke to the child was a social worker. Although the medical records indicate the detective was in the room when the nurse took photographs of the child for inclusion in the medical records, there is no indication that he was in the room when the child made the statements, or that the detective directed her acts of taking photographs. In fact, the detective took separate photographs for investigatory purposes. Further, Nurse Norman testified that the questions she asked the child were geared towards discovering the "mechanism of injury" and to medically treat the child. She testified that she simply asked the child how he obtained his injuries. In response, the child asked her if he was safe. Once she confirmed he was safe, the child answered her question. She further testified that her notes were entered into the system for review

by the physician and that based upon her observations and evaluation of the

child, additional tests were ordered which revealed a wrist fracture.

{¶25} Importantly, aside from the statements complained-of above,

Nurse Norman also testified at trial as follows:

"Jonathan said Eric hit my head off the spicket in the bath tub

over and over again until I fell asleep and when I woke up he

was hitting my head off the bathroom door handle."

Appellant did not object to this additional testimony that occurred at trial

that appears to have supplemented the statement contained in the medical

record, nor does he challenge this statement on appeal.

{¶26} Based upon the foregoing, and for the same reasons we find the

statement made to Dr. Collins was admissible, we find these statements to be

admissible as well.  Nurse Norman's questions were not asked in a leading

or suggestive manner, there are no factors present indicating a reason to

fabricate, and the child's young age suggests an inability to fabricate.

Further, the fact that the child asked if he was safe suggests he understood

the nurse was there to help him and that he needed to tell the truth.

{¶27} At this stage we address Appellant's argument that the child's

statements were sometimes inconsistent as to how he was injured and who

injured him.  First, Nurse Norman testified that the child was essentially

covered in bruises that varied in color, suggesting different stages of healing. The child also had multiple fractures and other injuries. He had skull and orbital fractures, a wrist fracture and later diagnosed partially-healed hand fractures, as well as a fractured tooth. It may have been difficult for the child to differentiate who caused which injury and at what time. Further, the medical records, testimony and photographs indicate the child was severely injured. His head was swollen and bruised and one of his eyes was completely swollen shut. He had multiple bruises all over his body, literally from his head to his feet. Clearly this child had suffered a multitude of injuries and was physically compromised at the time he was taken to the emergency room.

{¶28} Appellant also argues that the child initially reported to a paramedic that he was injured while playing, a statement which was corroborated by his mother and grandmother, who stated the child had fallen while jumping on stumps, and that this inconsistency with the statements he made to Dr. Collins and Nurse Norman call into question the reliability of his statements. The record indicates that he made the initial statement to the paramedic while he was in the presence of his mother. His mother was not present when he made the statements to the emergency room staff. As noted in *State v. Muttart*, *supra*, at ¶ 41:

"We are aware, of course, of the possibility that parents of
abused children may give false information to a physician,
including denials or deliberate misidentifications, *see United
States v. Yazzie* (C.A.9, 1995), 59 F.3d 807, 813, and that a
victim might deny abuse to the physician, particularly when in
the company of the abuser. Such falsehoods may be a survival
strategy or may reflect a complex psychodynamic or
phenomena that untrained persons may not understand fully.
Although physicians and psychotherapists are not infallible
when diagnosing abuse, we believe that their education,
training, experience, and expertise make them at least as well
equipped as judges to detect and consider those possibilities.
*Accord* [*State v. Dever,* 64 Ohio St. 3d 401, 411, 596 N.E.2d
436]; cf. *Parham v. J.R.* (1979), 442 U.S. 584, 609, 99 S.Ct.
2493, 61 L.Ed.2d 101."

Thus, the statement made to the paramedic may have been made as result of

the child's survival instincts, as later indicated when he asked Nurse Norman

if he was safe. Further, the record indicates the child's mother was still

under investigation at the time of Appellant's trial. However, the possibility

that she may have also played a role in the child's injuries does not negate

the statements the child made regarding Appellant, especially as to the critical and recent injury which led him to be transported to the hospital.

{¶29} Next, we consider Appellant's argument regarding the child's statements to Social Worker Tishia Richardson in the emergency room at Nationwide Children's Hospital. Appellant points to the child's statements to Ms. Richardson, which were made after he was transferred, and which indicated that his brother, C.H., hurt him, that his mother hurt him with her foot, and when asked whether Appellant hurt him, the fact that the child remained silent, as further examples of the child's inconsistency. Again, for purposes of admissibility, these statements were also made for medical treatment and diagnosis, as testified to by Ms. Richardson herself. For all the same reasons the statements made to Dr. Collins and Nurse Norman were admissible, so were these.

{¶30} A review of trial transcripts does indicate the child told Ms. Richardson that C.H. hurt him. When asked if a big person also hurt him he said "mommy." When she asked him to tell her more about mommy the child pointed to his foot. Ms. Richardson then asked if his mommy hurt his foot and he said "no, mommy's foot" and pointed to his chest area, but he did not elaborate. Finally, when Ms. Richardson asked the child if "Eric did something" the child nodded yes. She then asked the child to tell her about

it but the child remained silent. Ms. Richardson testified that she did not specifically ask the child if Appellant had hurt him. Again, although there was some inconsistency related to the child naming C.H., the child was consistent in also identifying his mother and Appellant. Contrary to Appellant's assertion, Ms. Richardson did not specifically ask if Appellant hurt him. Rather, when asked if Eric "did something" the child nodded yes, but then refused to elaborate. We cannot conclude, based upon the record, that Ms. Richardson's testimony contained statements by the child revealing an extent of inconsistency indicating a lack of reliability. Further, because these statements were admitted, the jury was able to hear, consider and properly weigh any inconsistency when making its decision.

{¶31} Finally, as indicated above, we do not consider Appellant's arguments regarding the admissibility of statements made to Ashley Muse at the Child Protection Center, as she was called by the defense, not the State. Any error in the admission of her statements would have been invited by Appellant. Regarding Appellant's assertion there was another inconsistency due to the fact that the child shook his head no when asked if Appellant punched him, we note that the child reported to Nurse Norman that Appellant had hit him, and that when Appellant didn't, that his mommy did. When the child made this statement to Nurse Norman he held up his fist.

Thus, the child never used the word "punched" in describing how he had sustained his injuries. Further, although Appellant asserts the child shook his head no when asked if Appellant had ever punched him, Appellant mischaracterizes the testimony of Ashley Muse. The trial transcript indicates the following testimony by Ms. Muse in response to defense counsel's questioning. Although lengthy, we believe setting forth the following testimony is vital to a proper analysis of this portion of Appellant's argument.

"Q: At some point you started asking him questions?

A: Yes.

Q: And you asked him if Eric punched him?

A: I don't recall that specifically.

Q: You asked him twice about Eric injuring him, correct?

A: I recall asking about the cast and his eye injury.

Q: Okay but you don't recall saying or asking him if Eric punched him?

A: I don't recall.

Q: Did you ask him if Eric caused him an injury?

A: I believe so.

Q: And his response was a shake of the head negative?

A: Correct.

Q: Okay and you asked him a second time about Eric causing Eric hurting him and he again shook his head no.?

A: I believe so.

Q: And you didn't ask him about any other persons who may have hurt him?

A: I didn't.

Q: Is there anything that would refresh your recollection about what you asked or what he said?

A: I'm sure the video.

Q: Okay but short of watching the video, did you take notes of it?

A: I did.

Q: Did you bring those with you?

A: Yes.

Q: Would thos [sic] refresh your recollection about you asking him any questions?

A: Probably.

Q: Okay, well, if you want to look at those and see if they refresh your recollection?

A: They don't say specifically about asking questions about

Eric punching or doing something to him.

Q: Okay but they do indicate that you asked if Eric injured

him?

A: They do not.  I can read what my notes say if you would

like.

Q: No, but the purpose of the interview was to determine

whether or not if Eric injured him or hurt him?

A: No. The purpose of the interview was to see what

happened.

Q: Okay but you didn't ask him about his mother injuring him?

A: No I did not.

* * *

Q: You're unsure exactly what you asked Jonathon?

A: Not exactly my questions, I can read through my notes, but

–

Q: Well, we'll try going back through this again.  Did you ask

him if Eric punched him?

A: I don't recall saying 'punch'.

Q: Okay did you ask him if Eric did anything to hurt him?

A:  I believe so.

Q:  He shook his head no?

A:  Correct."

{¶32} However, on re-direct examination Ms. Muse testified that because the child was not participating in the interview and did not want to talk about his injuries, she ended the interview.  This testimony appears as follows:

"Q:  And part of the reason this interview was only eight to ten minutes long was you got the answers you didn't want which were shakes of the head no and you ended it?

A:  That's not correct.

Q:  But you didn't ask him about his mother injuring him did you?

A:  He wasn't participating in the interview so I ended it.

Q:  Well, what's participating?  You asked a question 'Did Eric injure you' and he shook his head no.

A:  Generally when a child has visible injuries and you ask them about those injuries, you try to get them to open up and talk about that, he was not wanting to do that."

{¶33} Further, on cross-examination the State was able to draw out testimony from Ms. Muse that aside from answering a few questions during the rapport-building part of her interview with the child, the child did not answer any substantive questions or otherwise participate in the interview. Thus, it is unclear from our review of the record whether the child was affirmatively denying Appellant had injured him, or whether he was refusing to answer the questions posed to him. It appears from Ms. Muse's testimony that she construed his actions as not participating. Regardless, to the extent this testimony indicated an inconsistency in the child's statements, the jury was able to hear, evaluate and weigh that inconsistency in their deliberations.

{¶34} Additionally, at least with respect to the statements made to Dr. Collins, Nurse Norman, and Social Worker Tishia Richardson, the statements were not only submitted to the jury through the testimony of the individual witnesses, but also through the medical records, which were not the subject of the pre-trial motion in limine, and were admitted without objection at trial. As a general rule, authenticated medical records are admissible at trial. *State v. Kingery*, 12th Dist. Fayette No. CA2009-08-014, 2010-Ohio-1813, ¶ 32. "Although potentially replete with hearsay problems, medical records are admissible under the exception to hearsay rule

for records of regularly conducted activity set forth in Evid.R. 803(6). *Id.*;

citing *State v. Humphries*, 79 Ohio App.3d 589, 607 N.E.2d 921 (1992). As

further explained in *Kingery*, "[a]bsent some evidence that the identity of the

perpetrator is necessary for medical purposes, however, statements

identifying an assailant are not properly admitted pursuant to Evid.R. 803(4)

and Evid.R. 803(6), unless there was an independent basis for their

admission." *Id.* at ¶ 34; citing *State v. Smith*, 8th Dist. Cuyahoga No. 90476,

2008-Ohio-5985, ¶ 38; in turn citing *Mastran v. Ulrich*, 37 Ohio St.3d 44,

48, 523 N.E.2d 509 (the identity of the person who struck [the victim] was

not reasonably pertinent to diagnosis or treatment).

{¶35} Here, however, we have already determined that the identity of

the person who injured the child was reasonably pertinent to medical

diagnosis and treatment, as it guided the determination as to what type of

testing and the extent of testing that needed to be ordered, and also due to

the need to establish a safe discharge plan for the child. Further, and

importantly, not only did Appellant fail to object to the admission of the

medical records during trial, he raises no argument regarding their admission

on appeal. Thus, to the extent the medical records were properly in

evidence, it can reasonably be stated that the testimony of the medical

professionals, which included the same statements of the child as contained

in the medical records, was largely duplicative. Thus, assuming arguendo the statements of the child were improperly admitted through the testimony of the medical professionals, any error was harmless in light of the admission of the medical records.

{¶36} Moreover, and although Appellant does not challenge the admission of the child's statements at issue based upon Confrontation Clause grounds, the United States Supreme Court recently held that a three-year-old child's statements made to his preschool teacher indicating he had been physically abused by his mother's boyfriend were not testimonial. *Ohio v. Clark*, 135 S.Ct. 2173, -- U.S. -- (2015). In reaching its decision, the Court reasoned that the statements "were not made with the primary purpose of creating evidence for Clark's prosecution[,]" and that the statements "occurred in the context of an ongoing emergency involving suspected child abuse." The *Clark* court further noted as follows in reaching its decision:

> "* * * their [the teachers] questions and L.P.'s answers were primarily aimed at identifying and ending the threat. * * * The teachers' questions were meant to identify the abuser in order to protect the victim from future attacks." *Id.* at 2181"

{¶37} Again, although Appellant does not challenge the child's statements on Confrontation Clause grounds here, the reasoning of the Court

set forth in *Clark* is applicable to the question of the reliability of the statements made by the child, which is a factor for consideration under the *Muttart* analysis. For instance, the *Clark* Court stated that the child' age (age three, the same as the child victim in this case) "further confirms that the statements in question were not testimonial because statements by very young children will rarely, if ever, implicate the Confrontation Clause." *Id.* at 2176. The Court further noted that "[a]s a historical matter, moreover, there is strong evidence that statements made in circumstances like these were regularly admitted at common law." *Id.*

{¶38} The Court opined that the question presented involved "whether statements made to persons other than law enforcement officers are subject to the Confrontation Clause." *Id.* at 2180. Ultimately, the Court reasoned that statements made to teachers were not like statements made to law enforcement, as there was no indication the teacher's primary purpose was to gather evidence, but instead their objective was to identify the abuser in order to protect the child, in part because "they needed to know whether it was safe to release [the child] to his guardian at the end of the day." *Id.* at 2181. The same rationale applies here. Three of the four medical professionals who testified at trial stated that identifying the abuser was relevant to medical diagnosis and treatment, not only because it would guide

the extent of the testing ordered, but also because they needed to be sure they didn't release the child to the abuser.[4]  As set forth above, "physicians, by virtue of their training and experience, are quite competent to determine whether particular information given to them in the course of a professional evaluation is 'reasonably pertinent to diagnosis or treatment [,]' and are not prone to rely upon inaccurate or false data in making a diagnosis or in prescribing a course of treatment." *State v. Eastham*, *supra* at ¶ 41 (internal citations omitted).

{¶39} The *Clark* Court further reasoned that the fact the teachers had mandatory reporting obligations "cannot convert a conversation between a concerned teacher and her student into a law enforcement mission aimed primarily at gathering evidence for prosecution." *Id.* at 2183.  Again, this reasoning is applicable to first responders in the form of emergency room doctors, nurses and social workers charged with trying not only to medically treat a child, but also charged with providing effective and safe discharge planning, and who are also statutory mandatory reporters.  Here, these medical professionals cooperated with law enforcement and contacted

---

[4] Doctor Heather Williams at Nationwide Children's Hospital testified it was not her role to determine who did the abuse, but rather her role was to "make a medical assessment of my interpretation of the injuries, but it is not my role to determine who did it."  However, Dr. Williams also noted in her testimony that Tishia Richardson was involved in "discussion formulating a safety plan with Chidren [sic] Services and they were considering any concerns they might have had about mom at the time."  The State notes that Dr. Williams and Dr. Collins had differing roles.  While Dr. Collins was the emergency room physician tasked with treating the child's injuries, Dr. Williams' role was to offer an opinion as to whether the injuries were accidental or intentional.

Children's Services as part of their mandatory reporting obligations. This conduct did not convert the primary purpose of their interactions with the child to one of collection of evidence for later prosecution, rather than obtaining pertinent information, including the identity of the abuser, for medical diagnosis and treatment purposes, which we believe includes establishing a safe discharge plan for the child.

{¶40} In light of the foregoing, we cannot find that the trial court erred, let alone committed plain error, in admitting any of the individual statements complained of by Appellant. As such, his sole assignment of error is overruled. Accordingly, the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**